**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| BORNEO ENERGY SENDIRIAN BERHAD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-09-0612 |
| | § | |
| SUSTAINABLE POWER CORP., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

The plaintiff, Borneo Energy Sendirian Berhad, a Malaysian corporation, sued Sustainable Power Corp. ("SSTP"), a Nevada corporation with its principal place of business in Baytown, Texas, and its chairman and "Chief Visionary Officer," John H. Rivera, a Texas citizen. Borneo Energy alleged a scheme to defraud based on SSTP's and Rivera's representations that SSTP could produce a biofuel product from palm waste, a byproduct of Malaysia's palm-oil industry. Based on these representations, Borneo Energy agreed to invest $2 million for 50 million shares of SSTP stock. The parties signed a Term Sheet and a Stock Subscription Agreement. Borneo Energy paid a $100,000 initial installment and a $900,000 second installment on the Stock Subscription Agreement and the $100,000 fee under the Term Sheet. Borneo Energy alleges that it did not pay the remaining amount because SSTP failed to deliver any stock, failed to provide audited financials as required under the Stock Subscription Agreement, and failed to provide technical assistance as required under the Term Sheet. Borneo Energy also learned that the SEC had sued Rivera on July 18, 2008, for securities fraud arising from misrepresentations about the same biofuel product and from a "pump and dump scheme."

Borneo Energy filed this suit on February 27, 2009, alleging securities fraud under 15 U.S.C. § 77(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5, and Texas common law fraud, negligence, and breach of contract. In addition to actual and punitive damages, Borneo Energy also seeks to impose a constructive trust on funds held by the defendants in the amount of $1.1 million and to recover its attorneys' fees, interest, and costs.

The defendants have moved to dismiss. (Docket Entry No. 10). Borneo Energy responded. (Docket Entry No. 12). Based on the motion, the response, the pleadings, and the applicable law, this court denies the motion to dismiss. The reasons are set out below.

**I.   The Allegations in the Complaint**

Borneo Energy alleges that it learned that SSTP had technology that it claimed could produce "Vertroleum," a biofuel, from various materials, including palm waste. Borneo Energy was interested in developing the potential of such waste. On February 18, 2008, its representatives visited SSTP's Baytown headquarters to investigate "a potential investment in SSTP and/or technical collaboration with SSTP." During the visit, SSTP demonstrated its process for producing Vertroleum using the "Rivera Process." The demonstration used soybeans as feedstock. Borneo Energy alleges that "Mr. Rivera represented that a similar result could be obtained from palm waste." During that visit, according to Borneo Energy, SSTP and Rivera made the following misrepresentations:

- Rivera represented that Vertroleum was of "high quality" and could be "used as biocrude, biodiesel, or as a biodiesel blending component for petroleum diesel," and that the production process created a residue that was a "high-quality fertilizer."

- Rivera represented that laboratory test results (which he presented) analyzed Vertroleum's chemical composition. Rivera did not mention that the testing company was closely related to SSTP; the company's president was a member of SSTP's Board. The test results showed that Vertroleum met the ATSM standards for biofuel. Borneo Energy alleges that Rivera and SSTP knew that Vertroleum did not meet these standards or recklessly represented Vertroleum's qualities despite the lack of proper testing.

- Rivera presented a "whitepaper" that purported to analyze SSTP's technology for generating biogas for use in electricity generation. The whitepaper projected an internal rate of return of 142.1% for SSTP, making a two-reactor Vertroleum production plant in the United States economically viable. Borneo Energy alleges, on information and belief, that Rivera and SSTP knew that this internal rate of return was not achievable.

- Rivera represented that SSTP had plans to construct a four-reactor biogas generation plant in Baytown and to expand to add more reactors.

- Based on the whitepaper and the plans to construct the plant in Baytown, Rivera represented that SSTP was a high-quality investment venture.

- Rivera represented that SSTP was financially sound and that it had engaged an auditing firm that would shortly produce audited financial statements, which would be provided, along with other financial and technical information, "within weeks." Borneo Energy alleges, on information and belief, that Rivera and SSTP knew that they could not provide audited financials within that time frame.

- Rivera did not disclose the investigation by the SEC or his involvement in the "pump and dump" scheme.

Borneo Energy alleges that in reliance on these representations and omissions, it entered the February 28, 2008 Stock Subscription Agreement, agreeing to pay a total of $2 million for 50 million shares of SSTP stock. Borneo Energy also signed the Term Sheet, agreeing to pay a $100,000 fee for technical training and assistance from SSTP to produce Vertroleum from palm waste in Malaysia. Borneo Energy alleges that SSTP and Rivera never intended to provide the promised technical collaboration.

Borneo Energy alleges that it paid the initial $100,000 installment under the Stock Subscription Agreement and the $100,000 fee under the Term Sheet. In March 2008, Borneo Energy had testing performed on the Vertroleum product samples it received. Those test results showed that the product did not meet relevant standards. Borneo Energy wired a second installment of $900,000, withholding the remainder pending receipt of the SSTP audited financials and additional test results. Borneo Energy received neither. Nor did it receive the promised technical collaboration and assistance or any SSTP stock. On July 18, 2008, the SEC sued Rivera over his involvement in the USSE stock. This lawsuit followed.

## II.     The Applicable Legal Standards

### A.     Rule 8 and Rule 12(b)(6)

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.

R. CIV. P. 8(a)(2). *Twombly* abrogated the Supreme Court's prior statement in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Twombly*, 550 U.S. at 562–63 ("*Conley's* 'no set of facts' language . . . is best forgotten as an incomplete, negative gloss on an accepted pleading standard . . . ."). To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see also Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 562–63).

In *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937 (2009), the Supreme Court elaborated on the pleading standards discussed in *Twombly*. The Court set out a procedure for evaluating whether a complaint should be dismissed:

> [A] court considering a motion to dismiss can choose to begin by indentifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 129 S. Ct. at 1950.

This procedure requires the court to engage in a two-step analysis. *See Fulk v. Village of Sandoval*, No. 08-843-GPM, 2009 WL 1606897, at *1 (S.D. Ill. June 9, 2009) (describing two-pronged approach set forth in *Iqbal*); *see also Floyd v. Quick Cash*, No. 1:09-CV-97 LMB, 2009 WL 2337111, at *1 (E.D. Mo. July 29, 2009) (same); *Joseph v. Northwood Group, LLC*, No. 08 Civ. 3644(NRB), 2009 WL 2252336, at *2 (S.D.N.Y. July 23, 2009) (same); *Iniguez v. Boyd Corp.*, No. 1:08-CV-1758-AWI-DLB, 2009 WL 2058529, at *2 (E.D. Cal. July 14, 2009) (same). First, the

court should identify which statements in the complaint are factual allegations and which are legal conclusions. *See Iqbal*, 129 S. Ct. at 1950. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555). The *Iqbal* Court explained: "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 1950. Second, the court must assume the truth of all factual allegations and determine whether those factual allegations allege a plausible claim. *See id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (internal citation omitted) (quoting FED. R. CIV. P. 8(a)(2)).

The *Iqbal* Court explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). With respect to the "plausibility" standard described in *Twombly*, *Iqbal* explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The *Iqbal* Court noted that "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent

with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The *Iqbal* decision also confirmed that the pleading requirements described in *Twombly* are not limited to the antitrust context present in that case. *See Iqbal*, 129 S. Ct. at 1953 (holding that the argument that "*Twombly* should be limited to pleadings made in the context of an antitrust dispute . . . is not supported by *Twombly* and is incompatible with the Federal Rules of Civil Procedure"). The Court explained that "[t]hough *Twombly* determined the sufficiency of a complaint sounding in antitrust, the decision was based on our interpretation and application of Rule 8," which "in turn governs the pleading standard 'in all civil actions and proceedings in the United States district courts.'" *Id.* (citations omitted).

In accordance with the pleading principles described in *Twombly* and elaborated on in *Iqbal*, a "complaint must allege 'more than labels and conclusions,'" and "'a formulaic recitation of the elements of a cause of action will not do'. . . ." *Norris v. Hearst Trust*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (footnote omitted) (quoting *Twombly*, 550 U.S. at 555); *see also In re S. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555), *cert. denied*, 129 S. Ct. 1669 (2009). "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief,

7

'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Cuvillier*, 503 F.3d at 401 (quoting *Twombly*, 550 U.S. at 558).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion.") (internal citation omitted). However, a court may deny leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face . . . ." 6 CHARLES A. WRIGHT, *ET AL.*, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed. 1990) (footnote omitted); *see also Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999) ("A district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.") (footnote omitted).

  **B. Fraud**

    **1. Rule 9(b)**

Rule 9(b) states:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

8

"At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997)). The plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams*, 112 F.3d at 177. "Allegations about conditions of the mind, such as defendant's knowledge of the truth and intent to deceive, however, may be pleaded generally." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992).

### 2. The PSLRA

The PSLRA set high standards for pursuing federal securities fraud suits. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 321–22 (2007). The elements of a fraud claim are a material misrepresentation or omission; a defendant with scienter concerning the fraud; reliance; damages; and loss causation. *See Oscar Private Equity Invs. v. Allegiance Telecom, Inc.,* 487 F.3d 261, 264 n. 5 (5th Cir. 2007) (citing *Dura Pharms. Inc. v. Broudo,* 544 U.S. 336, 341–42 (2005)). The PSLRA enhanced the particularity requirements for pleading fraud under Federal Rule of Civil Procedure 9(b) in two ways. First, a plaintiff must "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading . . . ." 15 U.S.C. § 78u-4(b)(1)(B). Second, for "each act or omission alleged" to be false or misleading, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). *Tellabs* affirmed a three-step approach to reviewing scienter allegations on a motion to dismiss a federal securities fraud case under the PSLRA. 551 U.S. at 322–23. First, the allegations must, as in federal pleadings generally, be taken

9

as true.  *Id.* at 322.  Second, courts may consider documents incorporated in the complaint by reference and matters subject to judicial notice.  *Id.* at 322–23.  The facts must be evaluated collectively, not in isolation, to determine whether a strong inference of scienter has been pleaded. Third, a court must take into account plausible inferences opposing as well as supporting a strong inference of scienter.  *Id.* at 323.  The inference of scienter must ultimately be "cogent and compelling," not merely "reasonable" or "permissible."  *Id.*

The Fifth Circuit has rejected the group pleading approach to scienter and instead looks to the state of mind of the individual corporate official who allegedly made, approved, or issued the statement or furnished information or language to include in the statement, rather than generally to the collective knowledge of all the corporation's officers and employees acquired in the course of their employment.  *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 208 (5th Cir. 2009).  The allegations claimed to show scienter on the part of the named officer are analyzed to determine whether the complaint sufficiently pleads scienter.  *Id.*; s*ee also Indiana Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc*., 537 F.3d 527, 532–33 (5th Cir. 2008).

**III.   Analysis**

    **A.   Fraud and the PLSRA**

SSTP and Rivera argue that the complaint fails "to identify with specificity the particular statements alleged to have been made that contain an untrue statement of material fact, and to attribute them to the proper, appropriate Defendant." (Docket Entry No. 10 at 8).  SSTP and Rivera also argue that Borneo Energy fails to support its information-and-belief allegations with a sufficiently detailed "factual basis for forming such belief." (*Id.*).  SSTP and Rivera also fault Borneo Energy for failing to identify which defendant engaged in the acts that violated the statute

and for failing to allege facts giving rise to an inference that Rivera acted with the required scienter. (*Id.*). SSTP and Rivera also argue that the Term Sheet was not with SSTP but with a third party, Baytown Green Energy Consortium, which is not "directly affiliated with SSTP." (*Id*. at 6). SSTP and Rivera argue that Borneo Energy failed to provide funding to SSTP as required by the Subscription Agreement and as required by the Term Sheet as a condition for either Baytown Green Energy or Rivera to continue collaboration with Borneo Energy. (*Id.* at 6–7). SSTP and Rivera attach the Subscription Agreement and Term Sheet to their motion.

These arguments do not support dismissal. The complaint meets the requirements of Rule 9(b) by specifying the statements that were allegedly fraudulent, identifying the speaker, the date and place the statements were made, and explaining why they were false. The complaint specifies the speaker (Rivera), the statements (representations about Vertroleum and test results relating to it, SSTP's business, the existence of contracts to sell Vertroleum, the presence of plans to generate electricity from biogas, that SSTP was being audited and would shortly be able to produce audited financials and other information, and the omitted information about the SEC investigation into Rivera). The complaint also specifies the date, place, and circumstances of the statements, and the basis for alleging that they were fraudulent when made. The requirements of Rule 9(b) are met. *Williams*, 112 F.3d at 177.

The fact that some of the claims are made on "information and belief" is not a basis for dismissal. The complaint identifies which representations are alleged on information and belief to be knowingly or recklessly false. The complaint also states with particularity the facts on which such allegations of misrepresentation are made. For example, the complaint alleges that Rivera knew that the Vertroleum did not meet the ATSM biofuel standards or fertilizer standards, as

11

represented. The complaint alleges that Borneo Energy had additional testing performed that showed that the product did not meet the relevant standards, and that SSTP and Rivera refused additional testing or to allow Borneo Energy to observe any testing. The complaint alleges that Rivera knew that SSTP could not provide audited financial statements within the promised time frame, and that SSTP failed to provide the statements despite demands to do so, despite the fact that the second payment was contingent on the receipt of the financial statements, and despite the fact that Borneo Energy withheld the second payment because neither the financial statements nor an explanation were provided. These are not the type of vague, conclusory allegations that the PLSRA was intended to guard against.

The argument that the Term Sheet was not signed by SSTP but by the Baytown Green Energy Consortium does not support dismissal. John Rivera signed as CEO for Baytown Green Energy Consortium. John Rivera also signed the Stock Subscription Agreement, as CEO for SSTP. The complaint alleges that SSTP was part of the Baytown Energy Consortium and that SSTP was Rivera's agent and alter ego. The copy of the Term Sheet that Rivera and SSTP attached to their motion to dismiss, showing that Rivera is CEO of both SSTP and Baytown Green Energy Consortium, is consistent with these allegations. So is the allegation that Borneo Energy wired the $100,000 fee payment called for by the Term Sheet to SSTP, which accepted the funds.

The allegations in the complaint support a strong inference of scienter. To determine whether a plaintiff has alleged facts giving rise to a "strong inference" of scienter, a court must consider both: (1) plausible nonculpable explanations for the defendant's conduct; and (2) inferences favoring the plaintiff. *Tellabs*, 551 U.S. at 324. Evidence of scienter must be more than merely "reasonable" or "permissible." Because "[a]n inference of fraudulent intent may be plausible, yet

less cogent than other, nonculpable explanations for the defendant's conduct," the inference must be "cogent" and "at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 314. Borneo Energy has alleged that Rivera's representations about the qualities of Vertroleum, the test results, SSTP's business plans and contractual commitments, and SSTP's financials, were all false. Borneo Energy has pleaded facts that support a strong inference of scienter. Rivera failed to disclose the relationship between the testing company and SSTP. Borneo Energy's independent tests showed that the Vertroleum was not as Rivera had represented. SSTP refused to conduct additional tests or to let Borneo Energy observe. Rivera described SSTP's contractual commitments and its business model; Borneo Energy alleges that there were no such commitments and there were no plans to build the plants described in the business model. Borneo Energy alleges that Rivera promised audited financials within a specific period but failed to provide them, despite repeated demands and withheld payment. The inference of scienter from the totality of the allegations is "at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 314.

SSTP and Rivera argue that the complaint fails to allege that the defendants caused Borneo Energy loss. The complaint alleges that Borneo Energy paid $1.1 million for securities it did not receive and for technical assistance it did not receive, in reliance on the false statements made by Rivera. The defendants argue that there is no allegation of the present trading price of the SSTP securities, but the basis of the alleged loss is not a decline in the value of securities that Borneo Energy paid for and received. The basis of the alleged loss is that Borneo Energy paid $1.1 million for stock for a company that was not as represented and for services it never received. The

13

complaint adequately alleges the causal connection between the defendants' material misrepresentation and the plaintiff's loss.

The pleading requirements for fraud and for violations of the federal securities laws are met.

### B. The State-Law Claims

SSTP and Rivera argue that the negligent misrepresentation claim is deficiently pleaded. The complaint asserts negligent misrepresentation as an alternative to the fraudulent misrepresentation claim. Texas law recognizes the tort of negligent misrepresentation, as defined by the *Restatement (Second) of Torts* § 552. *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests,* 991 S.W.2d 787, 791 (Tex. 1999). The elements of a negligent misrepresentation claim are: (1) the representation is made by a defendant in the course of his business, or in a transaction in which it has a pecuniary interest; (2) the defendant supplies false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *Roof Sys., Inc. v. Johns Manville Corp.,* 130 S.W.3d 430, 438 (Tex. App.– Houston [14th Dist.] 2004, no pet.) (citing *Fed. Land Bank Ass'n v. Sloane,* 825 S.W.2d 439, 442 (Tex. 1991)). The complaint alleges facts that, if proven, would show these elements. The allegations are not conclusory and the factual allegations, taken as true, state a plausible claim for relief.

The breach of contract claim is also sufficiently pleaded. SSTP and Rivera allege that the breach of contract claim cannot stand because both the Term Sheet and the Stock Subscription Agreement require full payment by Borneo Energy, which was not made. To prevail on a breach of contract claim, a party must establish the following elements: (1) a valid contract existed between

the plaintiff and the defendant; (2) the plaintiff tendered performance or was excused from doing so; (3) the defendant breached the terms of the contract; and (4) the plaintiff sustained damages as a result of the defendant's breach. *See Valero Mktg. & Supply Co. v. Kalama Int'l,* 51 S.W.3d 345, 351 (Tex. App.–Houston [1st Dist.] 2001, no pet.). A breach occurs when a party fails or refuses to do something he has promised to do. *Townewest Homeowners Ass'n, Inc. v. Warner Commc'n Inc.,* 826 S.W.2d 638, 640 (Tex. App.-Houston [14th Dist.] 1992, no writ). When one party to a contract commits a material breach of that contract, the other party is excused from further performance under the contract. *See Hernandez v. Gulf Group Lloyds,* 875 S.W.2d 691, 692 (Tex. 1994); *West v. Triple B Servs., LLP,* 264 S.W.3d 440, 446 (Tex. App.–Houston [14th Dist.] 2008, no pet.). Borneo Energy has presented nonconclusory allegations that satisfy these elements. The loss it claims is not the benefit of its contractual bargain but the cash it paid.

The constructive trust claim is also sufficiently pleaded. Under Texas law, a constructive trust is an equitable remedy created by the courts to prevent unjust enrichment. *Hubbard v. Shankle,* 138 S.W.3d 474, 485 (Tex. App.–Fort Worth 2004, pet. denied). To obtain a constructive trust, the proponent must prove: (1) breach of a special trust, fiduciary relationship, or actual fraud; (2) unjust enrichment of the wrongdoer; and (3) tracing to an identifiable res. *Id.* Whether a constructive trust should be imposed is within the discretion of the trial court. *Id.* To impose a constructive trust, a breach of a duty or actual or constructive fraud must be present. *Id.* at 485–86.

Borneo Energy recognizes that its ability to have the court impose a constructive trust depends in part on its ability to show whether it can trace the funds it paid SSTP and Rivera to an identifiable res. (Document Entry No. 12 at 14). Borneo Energy has, however, pleaded

nonconclusory allegations that state a plausible claim for the relief it seeks. The complaint is sufficient to withstand dismissal.

**IV.    Conclusion**

The motion to dismiss is denied.

SIGNED on August 12, 2009, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge